Caruthers, J.,
delivered the opinion of the Court.
This was an action of assumpsit brought upon a verbal warranty of soundness of a negro girl slave. The slave was bought in October, 1854, and died on the 6th day of the next August. On the 13th of August, 1855, seven days after her death, ■ the defendant executed and delivered to the plaintiff, at his request, this instrument:
“Whereas, I have heretofore, to-wit, in the month of October, 1854, sold to John Cameron, of New Port, a negro girl named Eliza, representing said girl to be sound in body and mind; and agreeing to warrant said girl to be sound as aforesaid; and whereas, said agreement has never been reduced to writing: now therefore, I, *29 Jacob Ottinger, in compliance with said contract, do warrant that said girl was sound in body and mind at tbe time of said sale to said Cameron. Witness my band and seal this 13th August, 1855.
JACOB OTTINOER.” [l. s.]
“Attest: — T. S. GamoN, Noah ReNNer.”
This writing was proved and read to the jury. It does not clearly appear whether Ottinger knew at the time that the negro was dead, but it is most likely from the proof that he did; but that would not, probably, affect the case any way. The suit was not brought upon this writing, but it was offered as evidence to prove the verbal warranty previously made. It is very ■clear that it is of no force or validity .as an obligation, having been made after the contract, the death of the negro, and without consideration. The charge of the Court in relation to the effect of this instrument, was decisive of the case, and the jury rendered their verdict for defendant. The fact of the soundness of the slave at the time of the sale, was much contested in the proof, and made a difficult question of fact for the jury. But how they would or should have found that issue, we need give no opinion, as they were excluded from the consideration of it, or it was rendered unnecessary to consider of it, by the charge upon the other point.
His honor held, that the paper in question was a bill of sale with covenants of warranty, which might have been sued upon; that the same was a merger of the verbal warranty, and could not be received as evidence of the parol warranty, which was extinguished by it. The effect of the charge was, that the suit could not be *30 maintained, because it was based upon the parol warranty, which had been extinguished by the writing-under seal.
We are unable to concur in this view of the case. It seems to us to be entirely erroneous. It is a rare and strange instrument in its form. It is at first .a written acknowledgment of a past transaction, that rested in parol, and then it assumes the form of a covenant of warranty, such as usually accompany and constitute a part of bills of sale. It does not purport to contain a contract of sale, that it recites had already transpired, and was not in writing. It is neither a bill of sale in form or substance, nor in any way, or for any purpose obligatory as such. No suit could. be based upon -it, nor did it create any new obligations upon the maker. It was only a written acknowledgment of obligations previously assumed, ' and upon which this suit is based. The form given to it and the -formality of its execution, with seal and witnesses, or even the re-acknowledgment of the contract of warranty, which was before equally binding when proved, cannot change its nature and character. What is it at last, but a written recognition of a past verbal contract ? It was proper to go to the jury as written evidence to establish the parol contract of warranty upon which the suit was brought; and it would be plenary proof on that point, and leave nothing more for the jury to decide, but the question of the soundness of the slave at. the time of the sale with warranty.
For this error in the charge, -we reverse the judgment and remand the case for a new trial.